## BOROUGH OF BROOKVILLE v. R. ARTHURS.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY.

Argued October 10, 1889—Decided January 6, 1890.
[To be reported.]

1. If for a good consideration the owner of a lot fronting upon a borough street assume to the borough the obligation of keeping the sidewalk in front of the property in good repair, and through his neglect to do so the borough is compelled to pay damages to a person injured thereon, such owner is liable over to the borough for the damages so paid.
2. The fact that the liability of the borough to the party thus injured is predicated upon a neglect by the municipal authorities of their statutory duty to see that the sidewalk is kept in proper condition, is not an obstacle to such recovery over, as this neglect does not of itself constitute the borough and the property owner joint wrong-doers.
3. While the judgment recovered against the borough is conclusive upon the lot owner as to the existence of a defect, the liability of the municipality therefor, and the amount of damages thereby occasioned, if he had notice of and could have defended the action, yet he is not estopped from showing that he was under no obligation to repair the sidewalk and that the accident was not chargeable to his default.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 168 October Term 1889, Sup. Ct.; court below, No. 227
September 1887, C. P.

On July 29, 1887, the borough of Brookville brought trespass
against Richard Arthurs to recover reimbursement for certain
money paid by the plaintiff in connection with a recovery by
Mrs. Mary G. Brosius of damages for personal injuries received
by her upon the sidewalk in front of the plaintiff's property.
The defendant pleaded not guilty.

The case was tried December 10, 1887, and a verdict ren-
dered in favor of the plaintiff for $5,647.87, but the court after-
wards, on motion of the defendant, granted a new trial. At the
second trial on May 13, 1889, the following facts were shown:

The borough of Brookville was incorporated by the act of
April 9, 1834, P. L. 209. By proceedings in the Court of Quar-
ter Sessions of Jefferson county, at No. 22 May Term 1864, it
was duly subjected to the provisions of the general borough
act of April 3, 1851, P. L. 320.

On July 15, 1873, the burgess and town council of said bor-
ough enacted an ordinance requiring " that each and every
owner or owners, occupier or occupiers of real estate, shall, in
front of their several properties, on the streets hereinafter enu-
merated, grade, under the direction of the surveyor appointed
by the borough, and erect or repair, and keep erected and re-
paired at all times, sideways or footwalks, of the width here-
inafter mentioned, namely . . . . . on both sides of Pickering
street, from Jefferson street to Redbank creek, eight feet wide."

In and prior to the year 1885, the defendant was the owner
of a lot of ground in said borough, known as the Central Hotel
property and having a frontage on Pickering street. A board
walk had been erected in front of it on said street, in obedience
to the requirements of the ordinance of 1873. From April 1,
1884, to April 1, 1886, this property was in the occupancy of
Jacob Emery as tenant of the defendant. Sometime susbse-
quent to the commencement of his tenancy, Emery tore up a
part of the sidewalk along the property on Pickering street,
and dug a ditch across it, for the purpose of laying water pipes
to the hotel, but did not replace the sidewalk in such a manner

as to leave it in good repair. It afterwards received some repairs from the defendant, but they were unsubstantial and insufficient. On December 1, 1885, Mrs. Brosius, in passing over this sidewalk, accidentally stepped into a hole in it and received personal injuries, to recover damages for which she brought an action against the borough of Brookville. The borough authorities notified Arthurs to come in and defend the action, and he was present at the trial and testified as a witness for the borough. Mrs. Brosius recovered a judgment for $5,000, which the borough paid with its costs, and also the attorney's fees and other expenses of defending the suit, amounting in the aggregate to $5,416.32.

Upon the subject of the responsibility of Arthurs for the condition of the sidewalk at the time Mrs. Brosius received her injuries, the plaintiff called Robert Stewart, a member of the borough council and also of its street committee, who testified that the council notified the defendant in June, 1885, to repair the sidewalk within five days; that this notice was not complied with and the witness was appointed to interview the defendant and see that the required repairs were made; that such an interview was had, and the defendant, after considerable talk and scolding, agreed that he would fix the pavement as soon as he could get time, and likewise said that when the spring-time came he would put in a good pavement that should not trouble anybody; that the witness went back and reported to the council what the defendant had agreed to do, and notified the street commissioner that the defendant had agreed to fix the pavement; that subsequently it was patched up by some one, and upon his walking over it to ascertain its condition, it appeared to the witness to be repaired satisfactorily.

The plaintiff further put in evidence the following testimony of the defendant, respecting this sidewalk, given upon the trial of the action brought by Mrs. Brosius against the borough:

"After they served a notice of some kind on me, which I thought they had no legal authority to do, it was in possession of my tenant; and I didn't think they had any business to disturb the tenant; I didn't think they had any right to make such an ordinance; but they served it on me, and I thought the easiest way was the best way, perhaps, to save a lawsuit; I went and fixed it where those loose boards Emery had taken

out. They were not very good and the sun would cap them; and I went and fixed them; and afterwards I went and saw that (men had been kicking at them, and great travel up and down there, I don't know who) they all were fixed there; I did not take great pains to fix them. Mr. Emery promised to do it, but I don't know that he ever done it; and I didn't take great pains to fix them at that time. I fixed them a little at that time, but not very great."

The plaintiff also called Joseph R. Heasley, street commissioner of the borough of Brookville, and proposed to have him testify that the defendant, in consideration of the borough' giving him time to lay a new sidewalk until the next spring, agreed with the witness as a representative of the council, to see that the sidewalk was kept up; the offer being made for the purpose of showing that, even in the absence of any statutory liability as owner of the property, the defendant was responsible for the condition of the sidewalk, notwithstanding that a tenant might have been in full control and possession.

By the court: It would seem that would properly be rebutting. However, the order of the testimony is for yourselves.

Mr. Corbett, for plaintiff: We will withdraw the offer and reserve it for rebutting, if necessary.

At the close of the plaintiff's case in chief, the court, of its own motion, made the following order:

By the court: Plaintiff's counsel having withdrawn the offer of the testimony of Joseph R. Heasley on the question of the admission and declarations of the defendant, Mr. Arthurs, and also as to notice to him to repair the sidewalk, that leaves a portion of the same character of testimony before and after, in evidence. To make the record consistent, it is suggested that it all be excluded or all admitted. Therefore, let it all go out, under the offer of withdrawal by plaintiff's counsel. Notice dated June 20, 1888, ruled out.

Exception by plaintiff's counsel as to the ruling out of all notice from the town council to R. Arthurs to repair sidewalks.[9]

The defendant presented evidence tending to show that his tenant, Emery, was in full possession of the premises, and had control of the sidewalk in front of them, under his lease; that the lease did not require the landlord to make any repairs and that the sidewalk was in good repair at the commencement of the tenancy.

In rebuttal the plaintiff recalled Heasley and made the following offer:

We now offer to call Joseph R. Heasley, (the defendant having set up the fact that the premises known as the Central Hotel property were in the possession of the lessee,) in order to show by him that he was street commissioner of the borough during the year 1885, and that notwithstanding the fact that those premises were alleged to be in the possession of Jacob Emery, Mr. Arthurs agreed with the street commissioner of the borough of Brookville to look after that sidewalk and to see that it was kept in repair, and also to pay all damages that would happen to any person who was "injured or killed," as he said, upon the sidewalk; that he agreed to take care of the sidewalk and to exonerate the borough from responsibility.

Objected to, by defendant's counsel, for the reasons, (1) it would not be in rebuttal, and (2) it would be in contradiction of the lease plaintiff offered in evidence.

. By the court: The objection is sustained; exception.[10]

At the conclusion of the testimony, the court, WILSON, P. J., charged the jury, in part, as follows:

It is well settled that a municipal corporation having the exclusive care and control of the streets is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected and any one is injured, it is liable for damages sustained. The corporation has, however, a remedy over against the party that is in fault and has so used the sidewalk as to produce the injury, unless it was also a wrong-doer. [If it was through the fault of Arthurs that Mrs. Brosius was injured, he is concluded by the judgment recovered, if he had notice of the suit and could have defended it. That is, if the jury find from the evidence that he had a right to make defence, control the proceedings, examine and cross-examine witnesses, and take a writ of error from the judgment to the Supreme Court. But in this action, brought by the borough of Brookville against Arthurs, to recover back the damages it has been compelled to pay for his assumed neglect, it is competent and relevant for Arthurs to show by evidence that he was under no obligation to keep the sidewalk in question in

repair, and that it was not through his default that the accident happened; and, if the jury find from the evidence that there was fault on the part of the borough and the defendant, Arthurs, the borough cannot recover in this action, for the reason that one of two joint wrong-doers cannot have contribution from the other.] [1]

Counsel have submitted to the court requests for instructions to the jury upon their respective theories of the law of this case, as applicable to the facts, our answers to which will dispense with any further instructions to you on the law.

Plaintiff's counsel request us to instruct you:

1. If the jury believe, under the evidence, that the ordinance adopted July 15, 1873, was regularly and legally passed and promulgated by the burgess and town council of the borough of Brookville, Pa., it became the duty of Richard Arthurs, the defendant, to keep the sidewalk in front of his property on Pickering street in repair at all times; and if the said sidewalk was suffered to become out of repair by the act of negligence of a tenant or third person, thereby causing the injury for which Mrs. Brosius recovered against the borough of Brookville, then the defendant would be liable to reimburse the borough, without reference to whether the said property was in the possession of a lessee under the defendant or not, and whether the said tenant or lessee caused the said injury or not.

Answer: Refused.[2]

2. That even although the jury may find that the Central Hotel property was in the possession of a tenant or tenants under Richard Arthurs, the defendant, if they further find, from the evidence, that Mr. Arthurs did not repair the sidewalk, thereby causing the injury to Mrs. Brosius, for which she recovered from the borough, then the borough is entitled to recover from the defendant the full amount of the judgment rendered in the case of Mrs. Brosius against the borough of Brookville, together with costs and expenses and reasonable attorney fees incurred by it in the said trial, with interest thereon from the date of the judgment in the said case.

Answer: Refused.[3]

3. If the jury believe, from the evidence, that the defendant, Richard Arthurs, had either notice or knowledge, for some time previous to the trial of the case of Mrs. Brosius against

the borough of Brookville, that such suit was brought and was set for trial, thereby giving to him an opportunity to defend the same, and that he was present at the trial and was examined as a witness, the verdict and judgment in that case is conclusive against said Arthurs, as defendant in this case, as to the facts adjudicated therein, and the plaintiff is entitled to recover the amount of the said judgment, costs and reasonable attorney fees incurred in defending the same.

Answer: Affirmed on the law and facts stated therein; but the jury will also determine the law and facts as presented and answered in the defendant's sixth point and in connection with the facts therein stated.[4]

4. That under all the evidence in this case, the defendant, Richard Arthurs, has not shown any cause sufficient to exonerate him from liability to the borough of Brookville for the amount of the judgment, costs and expenses incurred by it in the case of Mrs. Brosius against the said borough.

Answer: Refused.[6]

The defendant's counsel request the court to charge the jury:

4. That the relation created between the plaintiff corporation and the defendant, R. Arthurs, is purely statutory, and for any violation of the statute and ordinance creating that relation, and for any such violation, the remedy and provisions of the statute and ordinance must be strictly complied with, and no common law action can be maintained by plaintiff for such violation.

Answer: Affirmed.[7]

5. That the verdict and judgment in the case of Mary G. Brosius against the borough of Brookville, No. 113 of May Term 1886, establishes conclusively that the borough officers were negligent in the performance of their duties, and the borough cannot have a remedy against Richard Arthurs, the defendant in this action, and the verdict of the jury should be for the defendant.

Answer: Refused.

6. That if the jury find from the evidence that the premises were leased to Jacob Emery, who went into possession under the lease which contained no covenant by the landlord to repair, or right to enter to make repairs, and that, during the

time Jacob Emery was in possession, he tore up the sidewalk in front of the Central Hotel, for the purpose of putting water into the Central Hotel, and that Mrs. Brosius received the alleged injury for which she recovered the judgment in the case of Mary G. Brosius v. the Borough of Brookville, at the place where Jacob Emery tore up said pavement, then R. Arthurs, the defendant, is not liable to the plaintiff in this action and the verdict of the jury should be for the defendant.

Answer: Affirmed.[5]

7. That a lessor, during the term of the lease, is not liable for repairs to the pavement in front of premises over which the lessee has control.

Answer: Affirmed.[8]

9. That under all the evidence in the case, the verdict of the jury should be for the defendant.

Answer: Refused. This point requests the court to charge the jury as a question of law, that the plaintiff cannot recover a verdict for the amount of its claim, under the law, and it has been refused because the proof in the case is submitted to the jury under the instructions of the court.

The verdict of the jury was in favor of the defendant, and judgment was entered thereon; whereupon the plaintiff took this appeal, assigning for error:

1. The part of the charge embraced in [ ] [1]

2–4. The answers to plaintiff's points.[2 to 4]

5. The answer to defendant's point.[5]

6. The answer to plaintiff's point.[6]

7, 8. The answers to defendant's points.[7 8]

9. The exclusion of plaintiff's evidence.[9]

10. The overruling of plaintiff's offer.[10]

*Mr. Cadmus Z. Gordon* and *Mr. William L. Corbett*, for the appellant:

1. It is difficult to ascertain the intention of the court in that part of the charge contained in the first assignment. Undoubtedly there was negligence on the part of both the borough and Arthurs, so far as Mrs. Brosius was concerned. But this negligence of the borough would not excuse Arthurs from liability to reimburse the borough, the case being one of purely

constructive and unintentional wrong: Armstrong Co. v. Clarion Co., 66 Pa. 218. The instruction was given as a general one, without defining in what cases the rule denying contribution or reimbursement as between wrong-doers is applicable, or stating the exception to the general rule. The jury were left to grope their way without the aid of proper instructions, no other portion of the charge giving them light as to the distinction between actual and constructive wrong-doers.

2. Under the borough act of April 3, 1851, P. L. 321, the borough authorities had power to impose upon lot owners the duty of relaying and repairing, at their own expense, sidewalks laid originally in obedience to the borough ordinance: Smith v. Kingston Bor., 120 Pa. 357. Whether so much of the ordinance as subjects occupiers, also, to this duty is valid, it is unnecessary to inquire. In any event the owner is liable to the duty, and any question of liability as between landlord and lessee has no bearing on this case. It would be a dangerous principle that would enable a landlord to escape responsibility by putting an insolvent tenant in possession. The relation between the landlord and the tenant is a different one from that between the municipality and the owner, and the latter relation can impose no liability on the lessee.

3. Although the dangerous character of the sidewalk may arise from excavations made by a tenant, the duty rests on the landlord to see that such repairs are made as will give safe passage to the public. He may be excused where the excavation is recent and without his knowledge, but in this case it was neither. An excavation like the one under this sidewalk is of such a nature as to require care and precaution on the part of the landlord, and it is his duty to exercise them: Robbins v. Chicago, 4 Wall. 657. Even if the obstruction or defect were caused by a trespasser, the defendant would be liable to repair. The judgment recovered by Mrs. Brosius was conclusive on the defendant: Chicago v. Robbins, 2 Black 418 ; Robbins v. Chicago, 4 Wall. 657 ; Catterlin v. Frankfort, 79 Ind. 547 (41 Am. Rep. 627) ; Westfield v. Mayo, 122 Mass. 100.

4. The testimony excluded by the court showed conclusively that the defendant himself caused the injury to Mrs. Brosius by the negligent manner in which he repaired the sidewalk, in the first instance, and by his neglect to keep it in repair when

he found that his first attempt at repairing had resulted in a failure. It also showed that he had placed himself squarely in the position of a servant of the borough, as to the work of repairing. Hence, setting aside any question of statutory duty, he was liable for any negligence in or non-performance of his duty as such servant: Wood on Master and Servant, §§ 324, 460, and cases cited. His position that the borough authorities were wrong-doers, because they confided in his promise to repair, might well be taken by Mrs. Brosius, but cannot shield him.

*Mr. H. Clay Campbell*, for the appellee:

1. The plaintiff is not seeking contribution and therefore Horbach v. Elder, 18 Pa. 33, and Armstrong Co. v. Clarion Co., 66 Pa. 218, do not apply to this case. The principle of each of those cases rests on mutuality of contract. No such mutuality exists here, the relation of the parties being purely statutory. Whether there is any principle of a prior liability, upon which the borough can recover over against the defendant, has never been determined in Pennsylvania. The authorities in other states sustaining the right of recovery over, are based upon the fact of the defendants being a wrong-doer: 2 Dillon Mun. Corp., §§ 1035, 1036. To entitle the plaintiff to recover against the defendant, it must show that he trespassed upon the sidewalk in some way, and that through his negligence alone the injury resulted; and the court was right in making the statement referred to in the first assignment.

2. The statutory duty of keeping the sidewalks in repair rests upon the borough authorities: Allentown v. Kramer, 73 Pa. 406; McLaughlin v. Corry, 77 Pa. 109. For neglect to properly perform this duty, the borough is liable to a party injured thereby: Nanticoke v. Warne, 106 Pa. 373; Erie v. Schwingle, 22 Pa. 384; Susquehanna Depot Bor. v. Simmons, 112 Pa. 384. The recovery of Mrs. Brosius against the borough was based upon its negligence, which is conclusively established by the judgment in that action, and for the results of its own negligence the plaintiff cannot recover against this defendant. It is a plain principle of law that in cases of this kind the party seeking to recover must be in no fault. Robbins v. Chicago, 4 Wall. 657, is not law in Pennsylvania, as a long line of cases beginning with

Commonwealth v. Passmore, 1 S. &. R. 217, and ending with Susquehanna Depot Bor. v. Simmons, 112 Pa. 384, establishes the doctrine that wherever there is liability upon an individual, the municipality is not liable, and where liability of the latter arises from neglect of a statutory duty, it is liable alone: See West Chester v. Apple, 35 Pa. 284. If it pay damages for which it was not liable, it can have no recourse against the wrong-doer: Keokuk v. Keokuk, 36 Am. Rep. 226; 2 Dillon Mun. Corp., § 1012; Beach on Cont. Neg., 284.

3. The duty imposed upon property owners to construct sidewalks is purely statutory: Chartiers Tp. v. Langdon, 114 Pa. 541. We must therefore look to the statute to find the nature and extent of their duties and liabilities in this respect. Referring to the act of April 3, 1851, P. L. 321, we find that the defendant's liability to repair, if any, was in the nature of a tax, and it was optional with him whether he would do the work or pay the borough in money. Upon his refusal or failure to do the work, the imperative duty of doing it fell upon the borough authorities, and he became liable solely for the penalty provided for by the act. A duty imposed by ordinance can be enforced only in the manner therein provided; for its violation a common law action cannot be maintained by the party injured: Phila. etc. R. Co. v. Ervin, 89 Pa. 71. Where a remedy is provided to redress a wrong or enforce a duty, it must be strictly pursued: Act of March 21, 1806, § 13, 4 Sm. L. 332; Chestnut Hill Turnp. Co. v. Martin, 12 Pa. 361; East Union Tp. v. Ryan, 86 Pa. 459.

4. There is another ground of defence to this action which is conclusive on the plaintiff's right to recover. The property in front of which the accident happened was in possession of a tenant under a lease, and there was no covenant to repair. The pavement was in good repair when leased and was torn up by the tenant at the place of accident, to take in water. It has been ruled that the tenant in possession is liable and not the landlord, for injuries to third persons caused by negligence; the tenant is bound to keep the ways in repair: Bears v. Ambler, 9 Pa. 193; Grier v. Sampson, 27 Pa. 183; Simons v. Thompson, 2 W. N. 209; Early v. Ashworth, 15 W. N. 142; Moore v. Weber, 71 Pa. 429; Brown v. Weaver, 17 W. N. 230; Knauss v. Brua, 107 Pa. 85. The plaintiff withdrew the

evidence of notice to Arthurs under the ordinance, and it would be unfair, not only to the court but to the defendant, to sustain the ninth and tenth assignments.

OPINION, MR. JUSTICE STERRETT:

In December, 1885, Mrs. Brosius was injured in consequence of a dangerous defect in the sidewalk of Pickering street, Brookville; and afterwards, in an action on the case for negligence, she recovered a verdict and judgment against the borough for $5,000 damages, which it subsequently paid, with interest and costs. The defect that caused the injury complained of in that case was in front of a lot owned by Richard Arthurs, Esq. The borough, claiming that, as between itself and Mr. Arthurs, the latter was liable over to it, brought the present action against him to recover the amount it was compelled to pay. The claim was grounded on substantially the following state of facts:

In 1873 the borough council, pursuant to the provisions of its charter, passed an ordinance requiring owners of real estate fronting on Pickering street to grade "and erect or repair, and keep erected and repaired, at all times, sideways or footwalks" eight feet wide on both sides of the street. The side- or footwalks were then made according to the requirements of the ordinance. In the summer of 1885, complaint was made that the sidewalk in front of Mr. Arthurs' lot was in bad condition, and unsafe for public travel; and thereupon the council notified him to repair the same within five days, etc., and appointed a committee to confer with him on the subject. At first he denied council's authority in the premises, but finally said he intended to put down a stone pavement in the spring, and, if the borough authorities would indulge him, he would repair the old sidewalk, and see that it was kept in proper condition until it was replaced by the new pavement. That proposition was reported to council, and accepted as satisfactory. He afterwards made some slight repairs, but not sufficient to put the sidewalk in safe condition. Subsequently, Mrs. Brosius was injured by accidentally stepping into an opening in the sidewalk, and brought suit against the borough, with the result above stated. The borough authorities notified Mr. Arthurs that the suit had been brought, and requested him to

Opinion of the Court.

defend the same, etc., but, aside from being present at the trial, it does not appear that he took any active part in defending the suit.

On the trial of the present action, evidence tending to prove the foregoing allegations of fact was introduced by the plaintiff. The defendant, Arthurs, being called, testified, as recited in the ninth specification of error, inter alia, as follows : "After they served notice of some kind on me, which I thought they had no legal authority to do, it was in possession of my tenant; and I didn't think they had any business to disturb the tenant; I didn't think they had any right to make such an ordinance; but they served it on me, and I thought the easiest way was the best way, perhaps, to save a lawsuit; I went and fixed it where those loose boards Emery had taken out. They were not very good, and the sun would cap them; and I went and fixed them; and afterwards I went and saw that (men kicking at them, and great travel up and down there; I don't know who) they all were fixed there. I didn't take great pains to fix them at that time. . . . . I fixed them a little at that time, but not very great."

Robert Stewart, a member of the street committee, also testified as set forth in the same specification. Among other things, he said that, having been deputed by council, he "called on Mr. Arthurs about the time the five days' notice was up. . . . . . After considerable talk and scolding, he agreed to go with me, and look at the pavement, and did so. . . . . He agreed that he would fix that pavement as soon as he could get time, and likewise said that when the spring-time came he would put a good pavement there, that should not trouble anybody. I went back to the council, and reported Mr. Arthurs what he had agreed to do. . . . . I went to see Mr. Heasley, the street commissioner, and said to him that Mr. Arthurs had agreed to fix that pavement. And somebody fixed it afterwards, I don't know who; patched it up a little."

The plaintiff also offered to prove by the street commissioner, Mr. Heasley, that, in consideration of the borough authorities giving Mr. Arthurs time, until the next spring, to lay a new sidewalk, he agreed "that he would see that the sidewalk was kept up." This was objected to; and, upon an intimation from the court that the evidence "would properly be rebutting,"

the witness was withdrawn, with the right to recall him in rebuttal. When plaintiff's evidence in chief was closed, the learned judge, of his own motion, struck out the testimony of Arthurs and Stewart, above referred to, and also the evidence of notice to Mr. Arthurs to repair the sidewalk. This action of the court constitutes the ninth specification of error. Afterwards the plaintiff recalled the witness Heasley, and offered to prove by him, in rebuttal, that the defendant, Arthurs, agreed with him, as street commissioner of the borough, "to look after that sidewalk, and see that it was kept in repair, and also to pay all damages that would happen to any person who was 'injured or killed,' as he said, upon the sidewalk; that he agreed to take care of the sidewalk, and exonerate the borough from all liability." The offer was objected to, and its rejection by the court is the subject of complaint in the tenth assignment of error.

The rulings complained of in these two specifications are clearly erroneous. The borough had a right to show that, as between itself and Mr. Arthurs, it was his duty to keep the sidewalk in front of his own property in good repair. The evidence that was stricken out, as well as the testimony that was offered and rejected, tended to prove facts from which that duty undoubtedly arose. If, for a good consideration, he assumed the obligation of repairing the sidewalk in question, and keeping the same in proper condition, and by his neglect to do so the borough was compelled to pay the damages awarded to Mrs. Brosius, there is no reason why he should not be liable over to the borough for the amount thus paid. In 2 Dillon Mun. Corp., § 1035, the law is stated thus: "If a municipal corporation be held liable for damages sustained in consequence of the unsafe condition of the sidewalks or streets, it has a remedy over against the person by whose act or conduct the sidewalk or street was rendered unsafe, unless the corporation was itself a wrong-doer, as between itself and the author of the nuisance; and, if the latter had notice of the pendency of the action against the municipality, and could have defended it, he has been held to be concluded as to the existence of the defect or nuisance in the street, and as to the liability of the corporation to the plaintiff in consequence thereof, and as to the amount of damage or injury it occasioned; but . . . . he

Opinion of the Court.

is not . . . . estopped from showing that he was under no obligation to keep the street in a safe condition, and that it was not through his fault that the accident happened." It is undoubtedly the duty of a municipal corporation, having the exclusive care and control of its streets, to see that they are kept in a condition that is safe for the passage of persons and property, and if that plain duty is neglected, and thereby injury results to any one, the corporation is primarily liable to the injured party ; but if, as between the corporation and a third party, the injury resulted from the negligence of the latter, he is liable over to the corporation. The purpose of the evidence referred to was to establish such a relation as that between the parties to this suit. It was clearly competent and relevant, and hence the ninth and tenth specifications should be sustained.

In disposing of the remaining assignments of error, it is proper to consider them in the light of the evidence that was improperly stricken out and rejected, and as though the same were in the case.

There was no error in that part of the general charge recited in the first specification, except in the last clause thereof, wherein the learned judge said : " If the jury find from the evidence that there was fault on the part of the borough and the defendant, Arthurs, the borough cannot recover in this action, for the reason that one of two joint wrong-doers cannot have contribution from the other." This was a misapplication of a well-recognized principle. The borough and Mr. Arthurs were in no sense of the term joint wrong-doers. They did not co-operate in the same wrongful act in such way as to make them joint wrong-doers. While it is true that the borough could not deny its liability for neglect of its general duty to see that the streets and sidewalks thereof are kept in reasonably good and safe condition, it cannot be pretended that the corporation in any way co-operated with the defendant in his neglect to perform the duty which, as between it and himself, he assumed to discharge. As shown by the evidence, the true relation of the defendant to the borough was that of a resident property owner, bound by the ordinance, and still further by his express promise, to keep the sidewalk in question in good repair. The claim is not for contribution, but to recover from the defendant the amount which the plaintiff was compelled to pay in consequence

of his neglect to do what he should have done, and expressly promised to do. As such, it should have been submitted to the jury on the evidence. It follows from what has been said that the learned judge also erred in his answers to the points recited in the fourth, fifth, and seventh specifications, respectively. The remaining specifications of error are not sustained.

Judgment reversed, and a venire facias de novo awarded.