## Deutsch v. P., C. & Y. Railway

*Evans, Ivory & Evans*, for plaintiff.

*Pringle, Bredin & Martin, Arthur M. Grossman* and *Leonard M. Mendelson*, for defendants.

WEISS, J., March 19, 1956.—On December 29, 1947, Alexander C. Deutsch, an employe of the Pittsburgh, Chartiers & Youghiogheny Railway Company (hereinafter called the P. C. & Y.), who was engaged in the course of his employment, while attempting to board a freight car of the P. C. & Y., slipped and fell, thereby suffering the injuries complained of. The accident was caused by certain liquids escaping from pipes, valves, fittings, pumps and hoses adjacent to the railroad tracks and right of way of the P. C. & Y., which had escaped and frozen, creating a slippery and hazardous

condition at or about the tracks. The six-foot (half-way adjacent to railway tracks), at the time of the injuries and all other times, was owned and under the control of the Neville Company. The slippery and hazardous condition of the six-foot at the time and place of the accident resulted from a condensation of steam and the leakage from pipes at hoses which were used to convey chemicals from the railroad freight cars into the Neville Company tanks.

Plaintiff instituted an action in trespass at the above number and term to recover damages for personal injuries against his employer, the P. C. & Y., based on its alleged failure to furnish him a reasonably safe place to work as required by Federal Employer's Liability Act, and against the Neville Company based on alleged breach of its common law duty. The case was tried twice, the second trial resulting in a verdict in favor of plaintiff in the sum of $5,000 equally against the P. C. & Y. and against the Neville Company, immediately following which the court reformed the verdict by adding thereto the words: "With liability over in favor of the P. C. & Y. and against the Neville Company."

Both defendants moved for a new trial and the Neville Company in addition moved for judgment n. o. v. Following the argument before the court en banc on these motions but prior to any decision thereon, plaintiff, P. C. & Y. and the Neville Company entered into an agreement whereby plaintiff agreed to accept $4,-000 in full settlement of his claim, the same to be paid equally by the P. C. & Y. and the Neville Company, with the right reserved to the P. C. & Y. to litigate, by means of agreed statement of facts, its claim for full indemnity from the Neville Company under both the common law and a sidetrack agreement entered into between the parties. Said sidetrack agreement had not previously been a part of the record of this action.

Pursuant to this agreement, the P. C. & Y. and the Neville Company each paid plaintiff the sum of $2,000 plus one-half of the record costs, and thereafter, the P. C. & Y. and the Neville Company entered into and filed of record an agreed statement of facts upon the basis of which this court is now asked to determine whether the Neville Company is liable to the P. C. & Y. for the amount paid by the P. C. & Y. to plaintiff.

Of primary importance in these proceedings, then, is the legal effect of the sidetrack agreement entered into between the P. C. & Y. and the Neville Company on September 26, 1927, which was in full force and effect at the date of the injury to plainitff in this action. The agreement was drawn and prepared by the railroad on its standard printed form, and paragraph 8, which is the pertinent section for purposes of this controversy, provides as follows:

"EIGHT: It is understood that the movement of railroad locomotives involves some risk of fire, and the industry assumes all responsibility for, and agrees to indemnify the Railroad Company against loss or damage to property of the Industry, or to property upon its premises, regardless of Railroad Company negligence, arising from fire caused by locomotives operated by the Railroad Company on said sidetrack, or in its vicinity for the purpose of serving said Industry, except to the premises of the Railroad Company and to the rolling stock belonging to the Railroad Company or to others, and to shipments in the course of transportation.

"The Industry also agrees to indemnify, and hold harmless the Railroad Company for loss, damage, or injury from any act or omission of the Industry, its employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation,

while on or about said sidetrack; and if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

The sidetrack agreement above quoted determines this controversy. Any consideration of the common law rules of liability, in relation to a party's right to indemnity or to contribution then, should only be employed to aid in the proper legal construction of the sidetrack agreement. Although the issue before this court under the indemnity provision of the sidetrack agreement appears never to have been construed by a Pennsylvania State court, several cases on this point have been before the Federal courts, and two cases involving the construction of the sidetrack agreement indemnification clause have been decided on the basis of Pennsylvania law by the United States Court of Appeals for the Third Circuit. Both the railroad and the Neville Company in these proceedings appear to rely upon the same cases in their briefs, so that a more detailed consideration of these cases by this court is in order. Language equivalent to that contained in the sidetrack agreement here in issue was construed in Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F. 2d 902 (Ninth Circuit, 1950) ; Foster v. Pennsylvania R. R. Co., 201 F. 2d 727 (Third Circuit, 1953) ; and Baltimore & Ohio Railroad Company v. Alpha Portland Cement Company, 218 F. 2d 207 (Third Circuit, 1955).

Although a casual consideration of these cases might indicate that the courts have not achieved a uniform and harmonious application of the law, a more detailed study reveals that, in fact, the cases are consistent and when considered together clearly outline the boundaries and limitations which govern the rights of the parties under the indemnity section of the side-

track agreement. The courts point out in these cases that the paragraph in question contemplates three classes of cases. In the first class of cases is damage arising from fire, and in this class the industry agrees to indemnify the railroad regardless of the railroad's negligence and regardless of the industry's lack of negligence. The second class comprises those cases in which the injury or damage results from any act or omission of the industry and the railroad company is liable to its employes or third persons, not because of its own primary negligence, but because of a secondary or passive kind of negligence, and in a case of this class, the industry is made liable by the terms of the agreement to indemnify the railroad. The third class covers the situation of concurring *primary* negligence by the industry and the railroad, in which event the agreement provides for equal distribution.

While under the strict language of the indemnification clause contained in the sidetrack agreement, it could be argued that if the railroad were guilty of even passive negligence it should be relegated to the contribution provision at the end of the clause, courts in the above cases have pointed out that this construction would deprive the railroad of a right to indemnity given by the common law and that such a result could hardly have been intended by the parties. Foster v. Pennsylvania Railroad Co., supra, arose out of personal injuries sustained by a railroad employe who, while mounting a boxcar, slipped on a tin can on the industry's six-foot adjacent to the tracks, and being thus unable to pull himself in close to the side of the car, came into contact with girders erected by the industry adjacent to the tracks, as a result of which he was knocked off the car. An action was instituted against the railroad for negligence based on its failure to furnish plaintiff a reasonably safe place to work;

the railroad brought in the industry as a third party defendant. The jury, in a special verdict, found that the railroad and the industry were both negligent, and that plaintiff was free of negligence. Judgment was thereupon entered in favor of plaintiff against the railroad and in favor of the railroad against the industry for one-half the amount of the judgment. The railroad, relying upon a sidetrack agreement, containing the same indemnity provision as in the agreement between these parties, sought the entry of a judgment requiring the industry to indemnify it for the full amount of the judgment entered for plaintiff. The trial court refused to do so and, on appeal to the Circuit Court of Appeals, was affirmed. In denying the railroad full indemnity, the court pointed out that since the railroad and the industry were guilty of concurring negligence, the provision of the agreement as to the equal sharing of loss was applicable. However, in that case, the court concluded that under the verdict the jury must have found that the railroad was guilty of *primary* or *active* negligence in failing to provide, inter alia, sufficient lighting to illuminate the section of track where the injury occurred. Moreover, the court distinguished Booth-Kelly Lumber Company case in pointing out that in that case the railroad was guilty of only secondary negligence in not providing a safe place to work.

In Baltimore and Ohio Railroad Company v. Alpha Portland Cement Company, supra, a railroad employe was injured as a result of the derailment of a boxcar caused by the accumulation of mud and ice on an industry's road which crossed the tracks of the siding within the industry's plant. The railroad, having settled its employe's claim, brought action against the industry for indemnity under a clause in a sidetrack agreement identical with the one in issue. After hav-

ing concluded that the record in that case was bare of any evidence that the railroad had prior knowledge of the condition which caused the accident, the court held that the railroad was guilty merely of passive negligence and was thus entitled to complete indemnity from the actively negligent industry.

The court cited with approval §95 of the Restatement of the Law of Restitution, which provides as follows:

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, *unless after discovery of the danger, he acquiesced in* the continuation of the condition." (Italics supplied.)

Comment (*a*) under the foregoing section elucidates as to the denial of indemnity to one who acquiesces in the continuance of the condition after discovery of the danger:

"In all of these situations the payor [indemnitee] is not barred by the fact that he was negligent in failing to discover or to remedy the defect as a result of which the harm was occasioned; in most of the cases it is because of this failure that he is liable. On the other hand, if the condition was such as to create a grave risk of serious harm to third persons or their property and the payor was or, from his knowledge of the fact, should have been aware that such a risk existed, his failure to make the condition safe is reckless and he is not entitled to restitution."

Further amplification appears in the notes to the Restatement of Restitution under §95 at page 152:

"The rule stated in this Section applies to two situations: The first situation is where, by contract or by

statute, a person subjected to liability because of the condition of premises, has a right to expect that another will keep them in safe condition and where, because they are not safe, a third person is harmed. The second situation is where a person is under a duty to maintain premises in safe condition and another person by a negligent act causes them to be unsafe, with the result that a third person is damaged thereby. In both situations, if the first person has settled a valid claim in favor of the injured person, he is entitled to indemnity from the other in spite of his own negligence, unless *after knowledge of the risk, he recklessly imperils the injured person, or unless he consents to the continued existence of the dangerous condition thereby making it his own.*" (Italics supplied)

And on page 158 of the same treatise, again referring to §95, is stated:

"Where a person who otherwise would be entitled to indemnity is aware of the dangerous condition and nevertheless continues his activity, he is not entitled to indemnity."

It is clear from a consideration of the Baltimore and Ohio Railroad Company v. Alpha Portland Cement Company case, and particularly section 95 of the Restatement of the Law of Restitution, that if the railroad company in that case had known of the condition which caused the derailment, its negligence would then have been active rather than passive, so as to preclude it from complete indemnity. This conclusion is substantiated by the language of the court in that case on page 211:

"Having thus on its own motion obtained a record wholly devoid of evidence that the plaintiff had any knowledge of the unsafe condition, the defendant cannot now convict the trial judge of error in finding on that record that the plaintiff was not guilty of active negligence in permitting that condition to exist . . .

"We are thus presented with a case in which the defendant was actively negligent in creating and not correcting the unsafe condition of the track which caused the accident while the plaintiff's only negligence consisted of the defendant's negligence vicariously imputed to it by virtue of its nondelegable duty to its employee . . . to provide him with a safe place to work."

In the instant case, the parties have agreed in paragraph 6 of the stipulation that: "P. C. & Y. had notice and knowledge of the fact that the condition of the six-foot at the time and place of the accident was similar to that existing on every other winter night during the preceeding twenty years, P. C. & Y. having received from its employees, including plaintiff, numerous complaints in regard thereto."

Even though this court is not bound by any appellate decision on the issue raised in this proceeding, it is inclined to give great weight to the conclusions reached by the Federal courts in the cases cited. In these cases, it is apparent that the court, in construing the identical sidetrack agreement which is presently before this court for construction, relied heavily upon the Rule of the Restatement of Restitution, §95. The court in effect concluded that, under the terms of this agreement, where the negligence of the railroad is passive and negligence on the part of the industry has been established, the railroad is entitled to indemnity from the industry, but where it develops that the negligence of the railroad is primary or active, no indemnification is permitted, and the parties are relegated to the last section of the indemnification clause, which provides that they shall share the loss equally.

We have only here to determine whether the negligence on the part of the railroad was passive and secondary or active and primary. If the former, the

railroad is entitled to indemnification; if the latter, it is not. Pennsylvania fully recognizes the common law right of one only passively negligent to have indemnity from the active tortfeasors. Goerges v. Reading Co., 162 Pa. Superior Ct. 475.

Having determined the legal interpretation to be given the sidetrack agreement, we have little difficulty in resolving the question as to the type of negligence the railroad here was guilty of. Under the statement of facts themselves, it is stipulated that at the time of the accident and during the preceding 20 years, plaintiff and the railroad had notice and knowledge of the fact that the condition of the six-foot at the time and place of the accident was similar to that existing on every other winter night during the preceding 20 years, the railroad having received from its employes, including plaintiff, numerous complaints in regard thereto. Therefore, in failing to take some action either to correct the dangerous situation which had been created upon the premises of the industry, or to refuse to allow its employes to work in the vicinity of the industry until the dangerous condition was corrected, the railroad was guilty of more than mere passive negligence. Such action on the part of the railroad went much further than the mere failure to provide the injured employe with a safe place to work, but, in itself, contributed to the injury and the cause thereof. As such, the negligence of the railroad is primary and concurring with that of the industry, and, therefore, the clause of the indemnification section of the sidetrack agreement providing that the parties shall share the loss equally applies. If this were not the case, we can think of no case in which the railroad would not be entitled to complete indemnification from the industry under the sidetrack agreement. The very nature of the agreement contemplates a distinction between active and passive negligence on

the part of the railroad; otherwise, the last section of the indemnification clause would be meaningless.

It is the conclusion of this court, therefore, that the railroad is not entitled to indemnification as against the Neville Company in these proceedings. The statement of facts stipulated to by the parties to determine this controversy, in itself, convicts the railroad of active or primary negligence, and under the analysis of the applicable law, denies the railroad the right to indemnification.

An order will be drawn in accordance with this opinion.

### Decision

And now, to wit, March 19, 1956, upon a consideration of the briefs submitted in behalf of defendants, The Pittsburgh, Chartiers & Youghiogheny Railway Company and The Neville Company, it is hereby decided that the Pittsburgh, Chartiers & Youghiogheny Railway Company is not entitled, under the stipulated statement of facts, to indemnity over and against the Neville Company in these proceedings, and it is further decided that the verdict (since reduced to $4,000 and agreed to by plaintiff) in the within matter in the sum of $4,000 is to be paid equally by defendants.