The BALTIMORE AND OHIO RAIL-
ROAD COMPANY

v.

ALPHA PORTLAND CEMENT COM-
PANY, Appellant.

No. 11396.

United States Court of Appeals,
Third Circuit.

Argued Nov. 4, 1954.

Decided Jan. 10, 1955.

---

Howard R. Detweiler, Philadelphia, Pa., (Frank R. Ambler, Philadelphia, Pa., for appellant on the brief).

Howard Burtt, Philadelphia, Pa., (Guckes, Shrader & Burtt, Philadelphia, Pa., for appellee on the brief).

Before BIGGS, Chief Judge, and MARIS and HARLAN, Circuit Judges.

MARIS, Circuit Judge.

The defendant, Alpha Portland Cement Company, appeals from a judgment entered against it in the United States District Court for the Eastern District of Pennsylvania in favor of the plaintiff, Baltimore and Ohio Railroad Company, in the sum of $36,517.89 to indemnify the plaintiff for sums paid by it in a compromise settlement of a claim of Ralph E. Miller, one of its employees. Miller, a brakeman, was injured in a derailment of plaintiff's freight train on a siding located on defendant's premises at Manheim, West Virginia. The plaintiff alleged that the defendant had breached its contractual duty to maintain the sidetrack in a safe condition and that it sustained loss by reason of such default and is entitled to indemnity therefor. The plaintiff's claim is based upon a sidetrack agreement between the parties dated November 1, 1923, the pertinent provisions of which are as follows:

"Second Party [Alpha Portland Cement Company] to own and maintain the remainder of tracks as existing or as re-located.

"4. If Second Party should fail to maintain in reasonably safe condition that portion of the siding which it is required to maintain, the Railroad shall have the right to disconnect the track or refuse to operate over it when not in safe condition."

"10. * * *

"The Second Party also agrees to indemnify and hold harmless the Railroad for loss, damage, or injury from any act or omission of the Second Party, its employes or agents to the person or property of the parties hereto and their employes, and to the person or property of any other person or corporation, while on or about said track—; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

Trial was had without a jury. The trial judge found the facts to be as follows:

On the morning of February 12, 1948 a freight train containing a box car destined for defendant's loading platform had proceeded on plaintiff's main track in a westerly direction to a switch west of defendant's plant where four cars and the engine were switched to defendant's sidetrack and were then pushed in an easterly direction on that sidetrack toward defendant's loading platform. Miller was riding the box car, which was in the lead, standing on the ladder on the front end and right side of the car and looking out for trucks which might be approaching a crossing where a road within defendant's plant and used solely by its trucks went over

the siding. This crossing did not have any planking but there was an accumulation of frozen mud and ice there, as high or higher than the rails, which had been created by defendant's trucks which used the crossing. There had been snow on the ground for several days and there was evidence that a light snow had fallen that morning. As he approached the crossing riding the lead car Miller, exercising due care, noticed nothing unusual there, merely a thin layer of snow and ice. As the lead car went over the crossing the wheels of its front truck were derailed by the frozen mud and ice adjacent to the rails, the car veered to the right and Miller was crushed between the car and a concrete building adjacent to the track.

The defendant was notified of the accident. On January 25, 1951 Miller commenced an action against his employer, the plaintiff, in the United States District Court for the District of Maryland under the Federal Employers' Liability Act, 45 U.S.C.A. § 51. et seq., averring that the plaintiff had not furnished him with a safe place to work and that as a result of the derailment he suffered severe and permanent injuries. The plaintiff notified the defendant of the pending action but the defendant denied liability. The plaintiff compromised the claim by payment of $25,000 plus medical expenses. There is no suggestion that the settlement was not made in good faith, that the amount was not fair and reasonable or that the plaintiff was not legally liable to Miller.

The trial judge concluded that Miller's injuries resulted from the negligence of the defendant both in creating the unsafe condition and in failing to remedy it as required by the sidetrack agreement. He further concluded that the plaintiff was guilty of no active or primary negligence, its negligence, on the basis of which it settled Miller's suit, being merely the breach of its nondelegable duty to furnish a safe place for its employee to work, even though the place became unsafe through the act of a third party and without fault on its part. The trial judge accordingly concluded that under the indemnity clause of the agreement the plaintiff was entitled to full indemnity from the defendant for the amount which it had paid Miller, and not merely for contribution as a joint tort-feasor. Judgment was thereupon entered in favor of the plaintiff for the full amount of its claim. This appeal followed.

■ Upon this appeal the defendant concedes that the evidence supports the finding of the trial judge that it was guilty of active negligence. It urges, however, that the trial judge erred in finding that the plaintiff was guilty of merely passive negligence. Its contention in this court is that the plaintiff had prior knowledge of the dangerous condition of the track at the crossing, that the plaintiff failed to notify it of the condition or request its correction, and that this was active negligence which made the plaintiff a concurrent or joint tort-feasor entitled only to contribution under the final clause of the indemnity agreement.

The defendant's contention in this court that the plaintiff had prior knowledge of the unsafe condition of the track at the crossing is a complete shift from its position at the trial. There its position was that it was not guilty of negligence because there was no evidence that the unsafe condition had existed for such a length of time as to charge it with knowledge and a duty of correction. It asserted, as its counsel stated in presenting his motion to dismiss at the close of the plaintiff's evidence, that the evidence indicated that "the plaintiff had no knowledge of any defective or faulty or dangerous or unsafe condition prior to the happening of this occurrence." In making this statement he relied upon the plaintiff's answer to an interrogatory that it first learned of the condition of the sidetrack at the time of the accident and a statement by the plaintiff's track foreman to the effect that he examined the track two days before the accident and that at this particular crossing there was nothing to

lead him to believe that any cleaning up was necessary. Indeed the defendant went so far as to obtain an order from the trial judge striking out testimony of the plaintiff's conductor to the effect that he had previously reported the condition of the crossing to the track foreman. Having thus on its own motion obtained a record wholly devoid of evidence that the plaintiff had any knowledge of the unsafe condition, the defendant cannot now convict the trial judge of error in finding on that record that the plaintiff was not guilty of active negligence in permitting that condition to exist.

By the same token there is no merit in the defendant's contention that the plaintiff was guilty of active negligence in failing to notify the defendant of the unsafe condition and secure its correction. And in addition to its lack of knowledge of this particular condition, the trial judge found, contrary to defendant's contention, that the parties had not modified the defendant's obligation under the agreement to maintain the siding in reasonably safe condition by a custom under which the western end where the accident happened was only to be cleaned in winter when the plaintiff notified the defendant to do so. The evidence supports this finding and it eliminates any possible basis for this contention by the defendant.

We are thus presented with a case in which the defendant was actively negligent in creating and not correcting the unsafe condition of the track which caused the accident while the plaintiff's only negligence consisted of the defendant's negligence vicariously imputed to it by virtue of its nondelegable[1] duty

to its employee, Miller, to provide him with a safe place to work. We must determine whether under these circumstances the plaintiff is entitled, as the district court held, to full indemnity from the defendant for the amount paid to Miller in settlement of his claim. To decide this question we must determine the applicability and effect of the contract between the parties.

■ There is no evidence in the record as to where the sidetrack agreement was made. We must, therefore, presume that it was made in Pennsylvania.[2] Therefore, so far at least as the indemnity clause is concerned it would seem that it was to be performed there.[3] The fact that the defendant's main office is in Easton, Pennsylvania, where presumably the payment would be made, supports this view. Accordingly the law of Pennsylvania must govern the determination of our question, the nature of the obligation of indemnity contained in the agreement.[4] We find no case in which the Pennsylvania courts have passed upon the question here involved.[5] In Foster v. Pennsylvania R. Co., 1953, 201 F.2d 727, a case arising in Pennsylvania, this court had before it a claim for indemnity under a sidetrack agreement substantially the same as that here involved. The railroad was shown in that case to have been independently and actively negligent and it was held entitled merely to contribution and not to indemnity. This court, however, called attention to Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695, a case involving a claim for indemnity under a sidetrack agreement containing an indemnity clause almost identical with the

1. Terminal R. Ass'n of St. Louis v. Fitzjohn, 8 Cir., 1948, 165 F.2d 473, 476–477, 1 A.L.R.2d 290; Walls v. McKinney, W.Va.1954, 81 S.E.2d 901, 904–905; Atlantic Coast Line R. Co. v. Robertson, 4 Cir., 1954, 214 F.2d 746, 751.

2. Chicago Pneumatic Tool Co. v. Ziegler, 3 Cir., 1944, 151 F.2d 784, 788–789.

3. Compare Bank of Novo Scotia v. San Miguel, 1 Cir., 1952, 196 F.2d 950, 956.

4. State Bank of Chicago v. King, 1914, 244 Pa. 29, 31, 90 A. 453. See also York Metal & Alloys Co. v. Cyclops Steel Co., 1924, 280 Pa. 585, 588, 124 A. 752, 753.

5. In L. V. R. R. Co. v. Hertz, 1944, 38 Luz. Leg.Reg. 5, the Court of Common Pleas of Luzerne County, Pennsylvania, had a similar sidetrack indemnity agreement before it. The nature of the indemnity agreement was not involved, however.

clause involved in the case now before us. In the Booth-Kelly case the court found that the owner of the sidetrack was primarily negligent and the railroad only secondarily so and held that under the indemnity clause of the agreement the railroad was entitled to full indemnity. In the Foster case our court held that the Booth-Kelly case was inapposite because the railroad there was only secondarily or passively negligent. For that very reason the Booth-Kelly case is, and the Foster case is not, apposite here.

In the Booth-Kelly case the court construed the questioned indemnity clause in the light of the relevant rules of the common law as to indemnity and contribution. While under the strict language of the clause it could be argued that if the railroad were guilty of even passive negligence it should be relegated to the contribution provision at the end of the clause, the court pointed out that this construction would deprive the railroad of a right of indemnity given by the common law and that such a result could hardly have been intended by the parties. The rule of the common law to which the court referred is stated in section 95 of the Restatement of the Law of Restitution as follows:

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

The court in the Booth-Kelly case accordingly held that the first portion of the indemnity clause was intended to cover a case of the kind dealt with in section 95 of the Restatement, Restitution, while the last part of the clause was intended to abrogate the common law rule stated in section 102 of the same restatement [6] denying contribution between ordinary joint tort-feasors. Pennsylvania fully recognizes the common law right of one only passively negligent to have indemnity from the active tort-feasor.[7] In Goerges v. Reading Co., 1948, 162 Pa.Super. 475, 478, 58 A.2d 191, 192, the Superior Court of Pennsylvania quoted with approval section 95 of the Restatement, Restitution, as stating the law on this subject. The construction placed upon the clause here in question by the Court of Appeals for the Ninth Circuit in the Booth-Kelly case is thus seen to be in harmony with the law of Pennsylvania. We think it would be followed by the courts of that state. The district court was, therefore, right in so construing and applying the agreement between the parties in this case.

The defendant suggested in argument in this court that even if the indemnity agreement be construed as in harmony with section 95 of the Restatement, Restitution, and even if the negligence of the plaintiff be regarded as passive and secondary, nonetheless the plaintiff is not entitled to indemnity because it acquiesced in the continuation of the unsafe condition after its discovery. But acquiescence, being a matter of volition, cannot exist without actual knowledge of the condition alleged to have been acquiesced in.[8] And

6. "Where two persons acting independently or jointly, have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is not entitled to contribution from the other."

7. Brookville Borough v. Arthurs, 1890, 130 Pa. 501, 18 A. 1076; Brookville Borough v. Arthurs, 1893, 152 Pa. 334, 25 A. 551; Reymer v. Consolidated Ice Co., 1917, 67 Pa.Super. 468; Pittsburgh v. Reed, 1920, 74 Pa.Super. 444; Wise Shoes, Inc., v. Blatt, 1933, 107 Pa.Super. 473, 164 A. 89.

8. Pence v. Langdon, 1878, 99 U.S. 578, 581, 25 L.Ed. 420.

here, as the result of the defendant's trial motion already adverted to, the record is wholly devoid of any evidence of prior knowledge by the plaintiff of the unsafe condition. On this record the trial judge expressly denied a request which the defendant made after the close of the trial for a finding that the plaintiff "had prior knowledge or notice of the conditions which caused the derailment." It would be extravagant to suggest that under these circumstances the trial judge's action in this regard was erroneous.

The judgment of the district court will be affirmed.