**John P. KENNEDY, Plaintiff,**

v.

**PENNSYLVANIA RAILROAD COMPANY, Defendant and Third Party Plaintiff.**

**United States Steel Corporation, Third Party Defendant.**

**Civ. A. No. 12917.**

United States District Court
W. D. Pennsylvania.
Jan. 12, 1959.

United States Steel Corporation's (hereinafter called Steel) duty to maintain the crossing in a reasonably safe condition for Railroad purposes, and, that Steel failed to maintain the crossing in reasonably safe condition.

"Since the Railroad has paid the plaintiff's judgment there is nothing before the court but the third-party action."

However, a more detailed account is desirable as pointing up the present issues which this court must decide. Counsel for the third party defendant has given a detailed history of the case in his brief, which has been largely adopted here. He says:

"The plaintiff for many years prior to 1954 had been a conductor for Pennsylvania Railroad Company. In the within action the plaintiff sought to recover damages from the Pennsylvania Railroad Company, defendant, as a result of an accident sustained by him on July 14th, 1954, his action being brought under the Federal Employers' Liability Act, in which he averred that the defendant, Pennsylvania Railroad Company, had failed to provide him with a reasonably safe place to work and had failed to warn him of the dangerous condition of the crossing involved in this accident and specifically averred that his accident was solely caused by the negligence of the Pennsylvania Railroad Company, its agents, servants and employees, in certain respects therein set forth.

"Following the plaintiff having filed his complaint against Pennsylvania Railroad Company, defendant, Pennsylvania Railroad Company brought into this case United States Steel Corporation as third party defendant, alleging, inter alia, that on July 14th, 1954, the Steel Company had ordered forty-five empty cars to be placed for loading at its coal mine at or near Bute, Fayette County, Pennsylvania, and, since no other

James P. McArdle, Pittsburgh, Pa.; John M. Feeney, Jr., Pittsburgh, Pa., of counsel, for plaintiff.

Pringle, Bredin & Martin, Reed, Smith, Shaw & McClay, Pittsburgh, Pa.; Bruce R. Martin and Ira R. Hill, Pittsburgh, Pa., of counsel, for defendant.

WILLSON, District Judge.

Counsel for the Pennsylvania Railroad Company, the defendant and third party plaintiff has in his brief set forth a succinct account of the jury's findings. His statement is:

"Five days of trial, culminating in nine hours of deliberation by the jury, resulted in the jury's determination that the Railroad was negligent in failing to supply plaintiff with a reasonably safe place to work because of the condition of the crossing, that is that it was the

track was available at the time upon which to place the empty cars except coke yard track No. 5, that the train crew found it necessary to and did move twenty-four of the empty cars already on the south end of the track to the north end over a private road crossing owned by the third party defendant, United States Steel Corporation. It was further averred that in shoving the twenty-four cars over said private road crossing the first and lead car on the train became derailed by reason of clay, dirt and debris on said track and that as the first car of said train proceeded over said crossing the same became derailed. As a result the train struck an abutment, causing the plaintiff, John P. Kennedy, the conductor of said train and the employee of Pennsylvania Railroad Company, to jump or to be thrown from the said first lead car and sustain injuries thereby. In its complaint, Pennsylvania Railroad Company, as third party plaintiff, contended that the third party defendant, United States Steel Corporation, had the obligation to maintain said track and crossing at the time involved and that it failed to maintain said track and crossing at the time involved, and as a result its train was derailed through the alleged negligence of United States Steel Corporation, and for that reason Pennsylvania Railroad Company alleged that it was entitled to indemnity or contribution from the Steel Company to the extent of the whole or part of any sums which the plaintiff Kennedy might recover from Pennsylvania Railroad Company." The jury awarded plaintiff damages in the sum of $8500.00.

"It is admitted by the Steel Company that the crossing involved is owned and was owned at the time involved by it but the Steel Company although denied that Pennsylvania Railroad Company had any right whatever to take the train involved over said crossing, since the Steel Company had advised the Railroad Company some months previous to July 14th, 1954, that the coke ovens located at or near said crossing and along the track involved had been closed down and operations therein had ceased. The Steel Company also admitted at the time of this trial that it had ordered empty cars from Pennsylvania Railroad Company to be placed for loading at another coal mine owned by it near Bute, Fayette County, Pennsylvania, but the Steel Company alleged that no permission was granted by it for the Railroad Company or its employees to bring said empty cars into the area of coke yard track No. 5 even though Pennsylvania Railroad Company found the mine where the cars were originally to be delivered to be on strike on the morning of July 14th, 1954.

"The plaintiff Kennedy testified in this case that upon finding that a strike had taken place at or near the mine where he was originally instructed to place said empty cars, he then received instructions to place part of the empty cars on coke yard track No. 5, these instructions being given him by his superior, a supervisor for Pennsylvania Railroad Company. He further testified that after he had placed the twenty-four empty cars on the south end of the track, that is coke yard track No. 5, he proceeded by foot to the crossing involved in this case and observed the same and found the condition thereof to be good, and in his opinion sufficiently in good condition to take the train across the crossing to the northern end of coke yard track No. 5. He therefore positioned himself on the sill of the first car of the twenty-four empty car train and give a signal to the engineer in the engine which was to push the empty cars, and as the empty cars were pushed across the crossing involved he noticed that

the first car on which he was riding had apparently veered to the left and in the direction of an abutment located just north of the crossing, and as the said car in which he was riding was about to strike or actually did strike the abutment he jumped or was thrown from the car and sustained the injuries for which he seeks to recover damages in this case."

Following the jury verdict, this court directed that judgment be entered in favor of the plaintiff and against the Pennsylvania Railroad Company. In the third party action, judgment was entered in favor of the Pennsylvania Railroad Company and against the United States Steel Corporation in the full amount of the judgment and costs entered in favor of the plaintiff against the defendant. Steel filed a timely motion for a new trial. It also filed a motion for judgment notwithstanding the verdict in accordance with its motion for a directed verdict. However, as pointed out in Railroad's brief, the latter motion was not timely. Nevertheless, had it been timely, it would not have been granted, and the motion for a new trial must be denied.

The issues were left to the jury in a special verdict containing six interrogatories. In the first interrogatory the jury determined that the railroad was negligent in failing to provide the plaintiff with a reasonably safe place to work because of the bad or defective condition of the crossing. In the second interrogatory, the jury determined that the injuries suffered by plaintiff were not caused in whole or in part because of any defect or insufficiency in railroad equipment. In the third interrogatory the jury determined that plaintiff's injuries were not the result of a combination of the first two. In answer to the fourth interrogatory, the jury found plaintiff's damages to be $8,500. In summary, then, the first four interrogatories simply determined that the railroad was negligent because of a bad crossing which resulted in providing plaintiff with an unsafe place to work and that plaintiff suffered damages in the amount stated.

The fifth and sixth interrogatories submitted are the subject of the issues raised by Steel in its motion. These interrogatories and the answers of the jury are:

"5. Was the United States Steel Corporation, third party defendant, under the evidence, required to maintain the crossing in a reasonably safe condition for Pennsylvania Railroad Company purposes on July 14, 1954?

"Answer: Yes."

"6. If your answer to Interrogatory No. 5 is 'Yes,' that is, that the United States Steel Corporation was required to maintain the crossing in a reasonably safe condition, did the United States Steel Corporation maintain the crossing in a reasonably safe condition on July 14, 1954?

"Answer: No."

During the course of the trial and in the preparation of the interrogatories, as trial judge I had before me the Court of Appeals decision of this circuit, Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., 218 F.2d 207. The accident here happened in Pennsylvania and as in the cited decision, the law of Pennsylvania applies. Third party plaintiff's counsel has cited many decisions involving indemnity cases and the duty of landowners with regard to users of property. However, it seems to me that the legal issues between the present litigants turn on what the factual situation was that existed between them. It is clear that the Steel Company owned the track and the crossing. It is also clear that from time to time the Railroad used the track to deliver and take cars away from Steel's operations. A written agreement defining the rights of each as to a portion of this track had been entered into during the war. It became clear during the course of the trial, if not before, however, that the

written agreement didn't cover the crossing in question. It was undisputed that on the morning of July 14, Steel had ordered 45 cars from the Railroad to be delivered to Steel's coal mine near Bute, some distance away from this crossing. Railroad was unable to deliver the cars as directed, because a strike was going on at the Bute mine. Kennedy testified that his instructions, given to him by his superior, a supervisor for the railroad, directed him to place the cars on the empty coke yard track No. 5. Twenty-four of the cars were to be shoved over the crossing in question. During the pretrial and the trial of the case, Steel took the position that the Railroad had no permission to use this track on the day in question. Steel's position was supported by testimony that when the coke ovens were running, then the Railroad had permission to use the track and Steel had the duty to maintain the track over the crossing. According to Steel, long practice and routine between the companies established that on the shutdown of the coke ovens, Railroad was not to use the track and knew from the shutdown that Steel would not thereafter maintain the track at the crossing. Thus at the trial Steel did not contend that it had maintained the crossing, but its position was that when the shutdown took place in the month of February preceding, it did not thereafter maintain the track, because it was under no obligation to do so. The Railroad's evidence was to the contrary. Its witnesses testified that it was the understanding between the parties that when necessary in delivering or taking cars from Steel's establishments, it had permission to use any of its tracks and particularly this track. On the morning in question, this track was the only place available for Railroad to store the cars which it was unable to deliver to Steel at the point requested because of the strike. Railroad claimed that it did not receive notice that Steel would not maintain the track.

■ Therefore, the issues resolved themselves into the simple proposition as to what was the understanding between Railroad and Steel. The jury decided this issue in its answer to the fifth interrogatory, that is, that Steel was " * * * under the evidence, required to maintain the crossing in a reasonably safe condition for Pennsylvania Railroad Company purposes on July 14, 1954. * * * " As trial judge, during the trial I came to the conclusion that this issue was for the jury. I believe the jury under the evidence could have found either way on the disputed point.

■ Steel now makes the point that it was error for the court to refuse to charge the jury that the railroad was chargeable with the negligence of its conductor Kennedy who examined the crossing in question and directed the train across it. The answer to that point is that Kennedy, the plaintiff, testified that the crossing was suitable and safe in his opinion for the train movement. It was developed by a number of witnesses that the flangeways in the crossing were usually covered by a loose feathery dirt or dust from crushed slate, but that this condition presented no obstacle to the movement of the cars over the rails at the crossing. But on this occasion, underneath the slate the flangeways were filled with hard clay and dirt which permitted the flanges on the wheels to ride up and over the rails, with the result that the cars were derailed. The railroad company denied negligence in any respect. So, of course, did Kennedy. He was seeking a verdict and naturally absolved himself from any fault. But the Railroad had the non-delegable duty to provide him with a safe place to work, even though the crossing became unsafe through the act of the Steel Company and without fault on the part of the Railroad. Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., supra.

Neither Kennedy nor the Railroad discovered any danger. This brings into the case Section 95 of the Restatement of the Law of Restitution. Counsel for the Steel Company has cited as authority for his contentions the principles dis-

cussed in Bedal v. Hallack & Howard Lumber Co., 9 Cir., 226 F.2d 526. That decision is not helpful to Steel on the present issues. The Court of Appeals sent the case back to the trial court for decision on the very matters which were decided by the jury in the instant case. It is noticed, too, page 532, the court says:

"* * * The Railroad's judgment against the lumber company is predicated upon promises made by the lumber company to the Railroad in a lease between those parties."

The court also, at page 533, discussed Section 95 of the Restatement of the Law of Restitution and applies it as Judge Maris did in Baltimore & Ohio R. Co. v. Alpha Portland Cement Co. The result is that the railroad under the findings of the jury in this case is entitled to indemnity because of the evidence on the agreement between it and the Steel Company and also under the rule of the common law, Section 95 of the Restatement, it was the Steel Company which created a dangerous condition. The crossing having been found unsafe, the Railroad became liable to plaintiff because its duty to him to provide a safe place to work was non-delegable. But under the evidence, the agreement found by the jury to be in effect between the parties is in harmony with Section 95 of the Restatement and for that additional reason the Steel Company is liable to the Railroad for the amount of the judgment it paid plaintiff.

Steel's sixth, seventh and eighth reasons advanced for a new trial refer to alleged error by the court in refusing to charge as to matters relating to the contributory negligence of John P. Kennedy and the effect of such negligence on the third party action. As to these points, it is sufficient to say that the court did charge that the jury was, under the Federal Employers' Liability Act, 45 U.S.C. A. § 51 et seq., required to consider the issue as to whether or not plaintiff was guilty of contributory negligence and if so, to compare his negligence with that of the defendant in arriving at its verdict, if any, for the plaintiff. It was not necessary as a matter of law to submit this in a separate interrogatory and the court did not do so. Plaintiff could have been guilty of contributory negligence and perhaps he was as between himself and the defendant, and if so, the third party action was not barred. The Railroad is entitled to indemnity in this case even though it has been found negligent. Section 95 is based on that proposition. Of course, the Railroad has not admitted negligence and did not at any time during the trial.

In conclusion, there was room for fair-minded men to come to different conclusions on the factual issues presented by the evidence. Therefore, the jury's decision is final and will not be disturbed. The motions for judgment notwithstanding the verdict and for a new trial will be denied.