Nadine PAYNE, Administratrix of the Estate of Ralph T. Payne, Deceased, Plaintiff-Appellee,

v.

The BALTIMORE AND OHIO RAILROAD COMPANY, Defendant-Appellant.

No. 14564.

United States Court of Appeals Sixth Circuit.

Oct. 31, 1962.

Alexander H. Hadden, Cleveland, Ohio (Baker, Hostetler & Patterson, Dwight B. Buss, Alexander H. Hadden, Cleveland, Ohio, on the brief), for appellant.

Craig Spangenberg, Cleveland, Ohio (Spangenberg, Hasenflue & Shibley, Cleveland, Ohio, William J. Curry, Ironton, Ohio, on the brief), for appellee.

Before O'SULLIVAN, Circuit Judge, and BOYD and THORNTON, District Judges.

THORNTON, District Judge.

This is a Federal Employers' Liability Act case in which defendant, The Baltimore and Ohio Railroad Company, appeals from a verdict and judgment against it in the amount of $136,267.23, plus costs. Plaintiff is the administratrix of the estate of Ralph T. Payne whose death was caused by the accident which is the subject matter of this case.

The four questions involved in this appeal, as stated by defendant, fall into two categories. Questions I, III and IV relate to two specific instructions given to the jury by the District Judge and to one specific instruction which the District Judge refused to give. Question II relates to defendant's contention that the negligence of the industry was not imputable to defendant, and that therefore there was not sufficient evidence to take the case to the jury on the question of its own independent negligence. Plaintiff accepts defendant's statement of the questions on appeal as framed by defendant with the exception of III which plaintiff contends does not state any issue actually in the case. We will refer more specifically to the four questions shortly.

At the time of the accident Payne was a freight brakeman employed by defend-

ant. At daybreak on July 2, 1959 the boxcar on which Payne was riding derailed and collided with the wall of an adjacent factory building. Payne was pinned between the wall and the boxcar and was killed instantly. The cause of the derailing is the pivotal point of this case—not as to what the cause was, but as to whose fault it was that the said cause was permitted to exist. The derailing of the boxcar was caused by its backing over a large accumulation of ashes, the ashes having been placed on a private spur track by the owner of the track. The track is one of two private spur tracks used for delivering freight to Standard Ultramarine & Color Co., a manufacturer of chemicals and dyestuffs in Huntington, West Virginia.. This company has been referred to as "SUCO" and we will continue to refer to it by such name. The two private spur tracks are known as Track No. 2 and Track No. 3. They are joined together by a switch located just outside the gate of SUCO's property. Track No. 3 is the track on which defendant's boxcar was traveling when it became derailed by the ash accumulation. The accident occurred on the premises of SUCO. The boxcar was part of defendant's train being operated by defendant. The ash accumulation existed because of the usual custom of SUCO to collect its ash disposal by dump truck from the ash silo located (on stilts 12 to 14 feet above the track) directly over Track No. 3. This operation resulted in spilled ash accumulating on the track. SUCO undertook to keep the track cleared of the spilled ash but, according to the testimony of its employees, Lynd and Romine, the sweeping and washing to get rid of spilled ash was directed to the rail area itself, and the accumulation between the rails was left to be washed away by rain. The ash might thus become crowned higher than the rails and could also get onto the rails by a rain washing it there. There is testimony by Romine indicating that it did rain during the night preceding the accident.

The defendant had an agreement with SUCO regarding the spur track. The defendant was allowed to use it for railroad purposes free of charge. SUCO was not allowed to authorize any other party to use the track without permission by defendant. It was also part of the agreement that SUCO had the duty to maintain the track. Defendant, on this appeal, contends that the District Judge erred in instructing the jury that under the circumstances present it was required to impute the admitted negligence of SUCO to defendant, even though defendant might itself be free of independent negligence. This is question I on this appeal.

Question II goes to the sufficiency of the evidence to go to the jury on the question of defendant's independent negligence if, as a matter of law, the negligence of SUCO is not imputable to the defendant.

Question IV is based on defendant's contention that an instruction should have been given to the jury as to the non-taxable nature of any award and as to the duty of the jury to in no way consider Federal income taxes in making an award.

As to question III, we think that our treatment of questions I and II will be dispositive of it.

As we view the law applicable to this situation, there are two tests by either of which the charge of the District Judge was proper. One test is that involving the duty of a railroad in the area of its own action or failure of action. The other test is the more encompassing one involving responsibility for the safety of a place where its employees are required to work. This latter calls into play the doctrine of imputable negligence which we view as being within the purview of the FELA. In applying these tests to the facts of this case it is necessary to bear in mind several well established principles. The Supreme Court has stated that the common law duty of an employer to use reasonable

care in furnishing his employees with a safe place to work obtains under the FELA. Bailey v. Central Vermont Railway, 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943). About this there can be no dispute. See Sano v. Pennsylvania Railroad Company, 282 F.2d 936, 937 (3 Cir., 1960), and cases cited; Chicago Great Western Railway Company v. Casura, 234 F.2d 441, 447 (8 Cir., 1956), and cases cited. What constitutes reasonableness will depend upon the dangers inherent in the particular business of the employer. Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967 (1943); Bailey v. Central Vermont Railway, 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943). A railroad has the non-delegable duty to provide an employee with a safe place to work. This is so despite the fact that it may not own, control or be under a primary obligation to maintain the premises on which the employee is injured. A railroad is not relieved from liability because such premises are unsafe or because of the existence of an unsafe condition brought about through the act of another and without fault, on the railroad's part. Sinkler v. Missouri Pacific Railroad Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958); Chicago Great Western Railway Company v. Casura, 234 F.2d 441, 447 (8 Cir., 1956); Kennedy v. Pennsylvania Railroad Company, 169 F.Supp. 406, 410 (W.D.Pa., 1959).

■ When defendant sent a boxcar on which Payne was properly riding onto a spur track containing a pile of ashes sufficiently high to cause derailment defendant abdicated its legal duty to its employee. The fact that the spur track was on property not owned by defendant cannot alter the duty of the defendant, as is abundantly clear from the cases cited in the above paragraph. See also the dissenting opinion of Judge Kalodner in Shenker v. The Baltimore and Ohio Railroad Company, 303 F.2d 596 (3 Cir., 1962). Can the existence of a contract between defendant and SUCO have the effect of relieving defendant from this duty? Can defendant successfully maintain that since it was the duty of SUCO under the terms of the contract to maintain the spur track that SUCO's negligence in failing to properly maintain it is not imputable to defendant? We think not.

■ Defendant owed a duty to decedent Payne. The jury was properly charged by the District Judge. If the jury found liability by virtue of defendant's independent negligence in sending the boxcar on a track having a dangerous condition present which could have been foreseen, the verdict is sound. If it found liability by virtue of imputing the negligence of SUCO to defendant, based on defendant's non-delegable duty regarding safety for its employees, the verdict is sound. Regardless of the rights between themselves, of defendant and of SUCO, defendant may not legally delegate to another its duty to its employee, and thereby escape liability to such employee. This is the basis for the FELA. If defendant does delegate and relies upon the services of its agent to carry out its own duty, it may not shift its liability from itself to said agent when an employee seeks to hold it directly liable. Under FELA the employer is the one owing the duty to the employee. The employee need not look elsewhere for his protection. He has a right under FELA to rely on his employer and none other. When the employer delegates its duty, or abdicates its control, the employer takes the risk, not the employee. There is ample basis in the record to sustain the jury's finding of liability regardless of which of the two theories it may have proceeded under, that of independent negligence or that of imputed negligence. The above adequately disposes of the first three questions involved in this appeal.

■ The remaining question concerns the requested and refused instruction to the effect that any award to plaintiff would not be income to her for Federal income tax purposes, that the jury should not add to nor subtract from any

award on account of Federal income taxes. The case of New York Central v. Delich, 252 F.2d 522 (6 Cir., 1958) is one in which this Court specifically held that refusal to give such a charge was not error. We are not persuaded that any of the cases cited and discussed by appellant in its briefs stands for a contrary holding. The failure to give the charge does not constitute reversible error.

There being no reversible error, the judgment of the District Court is affirmed.

O'SULLIVAN, Circuit Judge (dissenting).

I am unable to agree that it was proper for the District Judge to tell the jury that any negligence of SUCO was imputable to defendant B. & O. Since SUCO's negligence had been conceded in defendant's pleadings, the instruction given was equivalent to a directed verdict for plaintiff, subject only to the jury's consideration of the amount of damages and any diminution thereof because of contributory negligence.

I recognize that a railroad will be liable to its injured employee through the negligence of a third party to whom it has entrusted the carrying on of its own operational activities. Sinkler v. Missouri Pacific R. Co., 356 U.S. 326, 78 S. Ct. 758, 2 L.Ed.2d 799. The rationale underlying the imposition of such liability is not that the activity performed by the third party is non-delegable but, rather, that a third party performing "operational activities" of the railroad is an "agent" of the railroad within the meaning of FELA. Consequently, since the terms of the statute impose liability upon a railroad for an injury or death to one of its employees resulting "from the negligence of any of the officers, *agents,* or employees" of such railroad, the railroad must pay the damages for the negligence of a third party performing the "operational activities" of the railroad. Sinkler v. Missouri Pacific R. Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799. In the case before us, it was no part of the operational activities of the defendant for SUCO to dump ashes from its silo into its trucks. Ward v. Atlantic Coast Line R. Co., 362 U.S. 396, 398, 80 S.Ct. 789, 4 L.Ed.2d 820. Thus SUCO was not an "agent" of the defendant railroad within the meaning of FELA, and under the clear language of the statute, the defendant is not responsible for SUCO's negligence.

It is, of course, correct to say that defendant's duty to provide its employees with a safe place in which to work could not be delegated to SUCO. Likewise, the fact that the injury occurred on premises owned by a third party would not excuse the railroad for its negligence in failing to provide a safe working place. Atlantic Coast Line R. Co. v. Robertson, 214 F.2d 746, 751 (C.A.4, 1954); Terminal R. Ass'n of St. Louis v. Fitzjohn, 165 F.2d 473, 477, 1 A.L.R.2d 290 (C.A.8, 1948). These rules, however, do not justify a holding that whenever SUCO's employees commit acts of negligence which cause injury to the railroad's employees, the railroad will be held liable without any fault on its part. Negligence of the defendant, or of its "agents," is still a necessary ingredient to recovery under FELA. Ellis v. Union Pacific R. Co., 329 U.S. 649, 653, 67 S.Ct. 598, 91 L.Ed. 572; Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 507, 77 S.Ct. 443, 1 L.Ed.2d 493, 500; Kaminski v. Chicago River & Indiana R. Co., 200 F.2d 1, 3, (C.A. 7, 1952).

The instruction given in the District Court allowing the jury to impute SU CO's negligence to the defendant has the effect of holding the defendant liable without any fault on its part. Such an instruction changes the scope and tenor of FELA from an act providing an employee of a railroad relief in the case of an injury caused "in whole or in part" by the railroad's negligence, into a workmen's compensation act, but without any of the limitations and safeguards found in such acts. Congress, in enacting FE LA, did not pass a workmen's compensation law which would provide an employee with compensation for every injury incurred during the course of his

employment without regard to any fault on his employer's part. See, Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 509, 539–540, 77 S.Ct. 443, 1 L.Ed.2d 493, 501, 528–529.

Plaintiff's argument here seeks to obtain the benefits of two disparate theories of liability without accepting the detrimental consequences attendant on either of them. Under FELA, the employer is stripped of his common law defenses, contributory negligence of the employee being only a factor in mitigation of damages. FELA, however, allows recovery only for the employer's negligence. On the other hand, at common law, an employer will be held accountable for his employees' injuries, strictly and without regard to any fault on his part, if such injuries are caused by the negligence of a third party to whom the employer has entrusted the performance of a non-delegable duty. Prosser, Handbook of the Law of Torts, 359 (2d Ed., 1955). But, in a common law action, the contributory negligence of the injured party, however slight, is a complete bar to his recovery. Since plaintiff's decedent in the case before us was found guilty of some contributory negligence, it can be safely assumed that plaintiff wishes us to apply the common law doctrine of vicarious liability only to the extent that it renders defendant liable without fault. For the rest, plaintiff would have us apply FELA.

Plaintiff has cited no Supreme Court case to us in support of this proposition. The two cases cited in that connection are not authority for such a novel construction of FELA. In Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., 218 F.2d 207 (C.A.3, 1955), plaintiff railroad sought to obtain indemnity from defendant industry for an amount which the railroad had paid in *settlement* of an employee's claim for damages. The injury occurred on defendant's premises. No question was raised concerning plaintiff's liability. However, in affirming the judgment of the District Court's award of indemnity, the court noted that the trial judge had found the plaintiff railroad guilty of *negligence,* and that "its negligence * * * (was) merely the breach of its nondelegable duty to furnish a safe place for its employee to work, even though the place became unsafe through the act of a third party and without fault on its part." 218 F.2d at 210.

That is not the instruction given in the case before us. The trial judge here did not qualify his charge by saying, "If you find that the defendant did not exercise reasonable care in furnishing its employee with a safe place in which to work by entrusting the maintenance of the SUCO track and siding to SUCO, you may find the defendant guilty of negligence." The charge given operated to relieve plaintiff of her burden of proving defendant's lack of reasonable care—its negligence—and so was prejudicial. The other case relied upon by plaintiff, Kennedy v. Pennsylvania Railroad Company, 169 F.Supp. 406 (W.D.Pa., 1959) reversed 282 F.2d 705 (C.A.3, 1960), was also primarily concerned with the question of indemnity. While in the District Court's opinion there is language which might support plaintiff's position (169 F. Supp. p. 410), it does not appear that the trial judge there gave such an instruction to the jury. The case was submitted on interrogatories which were couched in terms of the railroad's negligence, rather than vicarious liability. 282 F.2d 708.

To summarize: It was the duty of the B. & O. to see to it that the SUCO siding was maintained in such a way as to provide its employees with a safe place to work. If it *negligently* failed to discharge such duty, it could not excuse its *own negligence* by saying that it had delegated such duty to another. But, if a railroad fully discharges its duty to maintain a safe place for its employees, it will not vicariously or by imputation be charged with the positive and unexpected negligence of another, unless the railroad has actual or constructive knowledge of the unsafe condition and does nothing about it. Kaminski v. Chicago River & Indiana R. Co., supra; Wether-

bee v. Elgin, Joliet & Eastern Ry. Co., 191 F.2d 302 (C.A.7, 1952); Denver & Rio Grande R. Co. v. Conley, 293 F.2d 612, 613 (C.A.10, 1962). To hold otherwise would be to make the railroad an insurer of the safety of its employees, a duty not imposed on it by FELA. Inman v. Baltimore & Ohio R. Co., 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198.

With the exception of the language in the Third Circuit cases cited above, none of the decided cases impose absolute liability on a defendant railroad for an injury occurring on another's premises in the absence of facts indicative either of actual knowledge or constructive knowledge of the unsafe condition. Kaminski v. Chicago River & Indiana R. Co., supra; Wetherbee v. Elgin, Joliet & Eastern Ry. Co., supra; Denver & Rio Grande R. Co. v. Conley, supra; Atlantic Coast Line R. Co. v. Robertson, supra; Terminal R. Ass'n of St. Louis v. Fitzjohn, supra. Such a requirement is entirely reasonable and consistent with the policy of FELA which is to impose liability on a railroad for its own negligence and not for that of others, except its "agents." In the case before us, there was evidence from which the jury could find that the ash accumulation which caused the derailment was the result of a single and unusual act of negligence by SUCO and that the railroad had not had reasonable opportunity to discover it and require its removal.

This dissent is not from the District Judge's submission of the question of the railroad's own negligence, but from his unqualified statement that negligence of SUCO's employees in the maintenance of SUCO's track was to be imputed to defendant.

I feel it appropriate, also, to express my own view of the District Court's refusal to advise the jury that its award of damages would not be subject to Federal income tax. The proffered instruction was as follows:

"I charge you as a matter of law that any award made to Plaintiff in this case, if any is made, is not income to the Plaintiff within the meaning of the Federal Income Tax Law. Should you find that Plaintiff is entitled to an award of damages, then you are to follow the instructions already given by this Court in measuring those damages, and in no event should you either add to or subtract from that award on account of Federal Income Taxes."

I would question the propriety and necessity of giving such instruction in its entirety, but wish to record my opinion that a short statement that the plaintiff will not be required to pay income tax on the amount awarded, should be made to the jury in this kind of case. This Court in New York Central Railroad Company v. Delich, 252 F.2d 522, 527 (C.A.6, 1958) held that it was not error in a death case to refuse to charge that "If you should find in favor of the plaintiff, I warn you not to consider income tax liability on your award." Such a cryptic warning was not equivalent to a simple and clear statement that a plaintiff's award is not subject to income tax. It would tend to obscure, rather than disclose the truth. I do not consider that decision at variance with my position here. I realize that the giving of an instruction that would require the jury to consider what income tax a deceased or injured plaintiff may have paid out of past earnings or what would be the likely income tax impact on future earnings, could lead to confusion. There is no reason, however, to fear confusion from a simple statement that a plaintiff's judgment in such damage case will not be diminished by the imposition of income tax.

Our contemporary public mind is well conditioned to the belief that, today, there is almost nothing of money value which anyone receives that is not shared in substantial degree with the national government. As pointed out by Chief Judge Lumbard in his dissent in McWeeney v.

N. Y., N. H. & H. R. Co., 282 F.2d 34, 41 (C.A.2, 1960), the public today reads of the rather spectacular share that the government takes of large sums "won on television quiz programs or in lotteries and sweepstakes." The public is informed of the amount that is taken in income taxes from large salaries paid to business executives, stars of the entertainment world and other large earners, and the amounts that are taken in taxes from decedent's estates. Have we any assurance that today's juries, awarding verdicts in the range of the one before us, $136,267.23, are aware that, unlike almost any other receipt of money, they are tax free? I would venture a guess that a substantial number of lawyers (excluding those engaged in the personal injury business) would be unsure of the tax consequences of receiving a $100,-000.00 personal injury verdict. Should we expect jurors to be better informed?

Some of the cases considering the subject merely hold that it would not be error to give a simple instruction on the point but, as plaintiff argues here, hold that the matter should be left to the trial judge's discretion. See, McWeeney v. N. Y., N. H. & H. R. Co., supra, p. 39. I do not think we can so easily dispose of the subject. I grant, as stated above, that jurors' deliberations might be impeded if they were required, in computing past earnings and calculating loss of future earnings, to guess as to past or future tax rates and regulations. Simple advice, however, that their present award will not be reduced by income tax does not have such vice. If, as seems to be conceded, no prejudice will be visited upon a plaintiff by such advice, why withhold it? In my opinion, serious harm can result to a defendant from jurors' lack of information in this field. They should know the truth. Except for the loss of unfair advantage, plaintiffs will not suffer from a jury knowing such truth. I consider it reversible error to refuse a simple instruction on the subject.

I would reverse the judgment and order a new trial.