**Robert F. SCHILLER, Plaintiff-Appellee,**

**v.**

**PENN CENTRAL TRANSPORTATION COMPANY, Defendant-Appellee,**

**and**

**General Motors Corporation, Defendant-Appellant.**

**No. 74–1171.**

United States Court of Appeals, Sixth Circuit.

Jan. 21, 1975.

S. Burns, Weston, Ronald Rispo, Weston, Hurd, Fallon, Sullivan & Paisley, Cleveland Ohio, for General Motors.

Fred Weisman, Weisman, Goldberg & Weisman, John F. Dolan, Thomas R. Skulina, Nicholas M. DeVito, Cleveland, Ohio, for appellee.

Before WEICK, EDWARDS and PECK, Circuit Judges.

WEICK, Circuit Judge.

Plaintiff-appellee Schiller was a conductor, employed by Penn Central Transportation Company (Penn Central); he was engaged with a crew in switching freight cars in the sidetrack yard of General Motors Corporation's (G.M.)

Fisher Body plant in Cleveland, Ohio. He was endeavoring to set a hand brake on a gondola car when he slipped and fell beneath moving freight cars, and both legs were severed below his knees.

Schiller filed a complaint against both defendants in the District Court, alleging that his injuries resulted from their joint or concurrent negligent acts or omissions. Schiller's action against Penn Central was brought under the Federal Employers' Liability Act (FELA) 45 U.S.C. § 51 et seq. His claim against G.M. was founded upon common law negligence.

The defendants filed answers to the complaint, in which each defendant cross-claimed against the other. The cross-claims were based upon a sidetrack agreement in effect between the parties, which agreement contained the following provision:

Except as herein otherwise specifically provided, in respect of all loss of or damage to property, or in respect of injury to or death of persons caused by or in connection with the construction, operation, maintenance, use, presence or removal of said track (a) the Railroad shall assume responsibility for and hold the Industry harmless from all losses, damages, claims and judgments arising from or growing out of the sole actionable acts or omissions including negligence of the Railroad, its agents or employees; (b) the parties hereto shall equally bear all losses, damages, claims and judgments arising from or growing out of the joint or concurring actionable acts or omissions including negligence of both parties hereto, their respective agents or employees; and (c) the Industry shall as-

sume the responsibility for and save the Railroad harmless from all losses, damages, claims and judgments arising from or growing out of the sole actionable acts or omissions including negligence of the Industry, its agents or employees.

The case was tried before a jury which returned a verdict against both defendants in the amount of $550,000, upon which verdict the Court entered a joint judgment.[1]

The District Court then proceeded to determine the issues involved in the cross-claims on the basis of the evidence offered at the trial. The Court adopted findings of fact in relevant part as follows:

2. The injury occurred while Robert F. Schiller was working in the course of his employment with Penn Central Transportation Company in the Fisher Body Yard occupied and maintained by General Motors Corporation.

3. The injuries received by Robert F. Schiller were proximately caused by the lighting and ground conditions on the premises owned and maintained by General Motors Corporation at its Fisher Body Yard. The failure of General Motors Corporation to light and maintain adequately the premises proximately caused the injuries to Robert F. Schiller.

4. The injuries sustained by Robert F. Schiller were caused by the unsafe condition of the C & O Car 306412.

5. The injuries received by Robert F. Schiller were caused by the failure of Penn Central Transportation Company to give adequate instructions to

---

1. The jury made findings in answers to special interrogatories to the effect that the defendants were negligent in any one or more of the specific acts of negligence claimed by the plaintiff; that the negligence of Penn Central caused in whole or in part the plaintiff's injuries; that the negligence of G.M. was a proximate cause of plaintiff's injuries; that plaintiff was not negligent in performing any one or more of the specific acts of negligence claimed by defendants; that the negligence of plaintiff was neither the sole cause nor a contributing cause of his injuries; that the plaintiff did not assume the risk of the lighting and ground conditions that existed at the time of his injury; that the damage to plaintiff was caused by negligent acts and omissions as to light and ground conditions at Fisher Body yard; that the damage to Schiller was caused by the unsafe condition of the gondola car and by failure of Penn Central to give to Schiller adequate instructions as to the use of said car.

Robert F. Schiller in the use of C & O Car 306412. (A. 19–20)

The Court adopted the following conclusions of law:

1. The negligence of General Motors Corporation proximately caused the injuries to Robert F. Schiller on the night of October 21, 1969.

2. The negligence of Penn Central Transportation Company caused the injuries to Robert F. Schiller on the night of October 21, 1969.

3. Inasmuch as the joint and concurrent negligence of both General Motors Corporation and Penn Central Transportation Company caused the injuries to Robert F. Schiller on October 21, 1969, General Motors Corporation and Penn Central Transportation Company, under the sidetrack agreement, are required to bear equally the judgment rendered in favor of Robert F. Schiller on January 4, 1973.

## JUDGMENT

Accordingly, the Court adjudges that General Motors Corporation and Penn Central Transportation Company shall equally bear the $550,000 judgment rendered in favor of Robert F. Schiller on January 4, 1973.

IT IS SO ORDERED.

/s/ Thomas D. Lambros
United States District Judge
(A. 20–21)

The Court denied G.M.'s motion for judgment notwithstanding the verdict in an opinion and order.

G.M. appealed to this Court from the denial of its motion for judgment notwithstanding the verdict and also from the judgment entered on Penn Central's cross-claim. Penn Central did not appeal.

Subsequent to the entry of judgment but prior to the appeal, Penn Central, acting pursuant to the orders of the United States District Court for the Eastern District of Pennsylvania in the Reorganization proceeding relative to Penn Central, paid one-half of the judg-ment. During pendency of the appeal Penn Central paid the remaining one-half of the judgment, and it was satisfied. Schiller was then dismissed from the appeal.

### I

■ G.M.'s brief in chief, which was filed in this Court prior to the satisfaction of the judgment, was addressed entirely to the alleged error of the District Court in denying G.M.'s motion for judgment notwithstanding the verdict. The satisfaction of the judgment pending appeal has operated to the benefit of G.M. Because the judgment has been discharged the appeal therefrom under Ohio law has become moot. Both defendants are no longer liable to plaintiff. Levin v. Pribanic, 110 Ohio App. 381, 169 N.E.2d 504 (1959); Cleveland Ry. v. Nickel, 120 Ohio St. 133, 165 N.E. 719 (1929). See also Eberle v. Sinclair Prairie Oil Co., 120 F.2d 746 (10th Cir. 1941); Apple v. Owens, 48 F.2d 807 (5th Cir. 1931).

Despite satisfaction of the judgment in favor of the plaintiff, the appellate issues between Penn Central and G.M. on the cross-claims still remain for our consideration. G.M. has addressed itself to these issues in its reply brief.

### II

As previously pointed out, the District Court adopted findings of fact and conclusions of law with respect to the issues in the cross-claims.

Specifically, the Court found that Schiller's injuries were caused by lighting and ground conditions on premises owned and maintained by G.M.; that the failure of G.M. to light and maintain adequately the premises was a proximate cause of Schiller's injuries. The Court also found that Schiller's injuries were caused in part by the unsafe condition of the gondola car, and the failure of Penn Central to give Schiller adequate instructions as to the use of the gondola car.

It is noteworthy that the jury made the same findings of fact.

Our province is to determine whether there is substantial evidence to support the factual findings of the Court and whether its conclusions of law are correct.

The pertinent provision of the side track agreement which we consider is:

(b) [T]he parties hereto shall equally bear all losses, damages, claims and judgments arising from or growing out of the joint or concurring actionable acts or omissions including negligence of both parties hereto, their respective agents or employees;

We are of the opinion that the evidence does not support the proposition contended by G.M. that the negligence of Penn Central was the sole cause of the plaintiff's injuries.

The purpose of the side track agreement was to provide for servicing of G.M.'s plant in Cleveland and on its premises. At the South Yard, which was owned by Penn Central, G.M.'s cars were stored; South Yard was located about three-fourths of a mile from Fisher Body Yard. The switching crew was required to go to the South Yard and move G.M.'s cars to the Fisher Body Yard, as they were ordered by G.M. These cars were moved over the main line of Penn Central, and upon their arrival at the Fisher Body Yard they were switched and placed on Fisher Body Tracks numbers 18, 19, 15, 9, 10 and 4.

The side track agreement required G.M. to maintain at its sole cost and expense the roadbed, crossings, supporting structures, and appurtenances in connection with the track shown in yellow on Joint Exhibit A–1, which included the Fisher Body Yard owned, maintained and controlled solely by G.M.

■ The side track agreement was not in derogation of common law as was contended by G.M., and should be accorded its plain meaning.

■ It was stipulated that G.M. knew that it was necessary for the railroad crews to "go up and down from trains and couple and uncouple trains; . . . uncouple and couple hoses and walk around various areas;" and that G.M. had knowledge of the illumination conditions.

Fisher Body Yard was a busy yard. In addition to the movement of freight cars in and out of the yard, trucks loaded with steel, driven by G.M.'s suppliers, also came in and out of the yard alongside of the tracks; the steel would be unloaded from the trucks, and the trucks would leave with other steel.

There were some oil deposits in various places in the Fisher Body Yard. These deposits were made by G.M. oiling the switches, and the excess oil would run down on the ground. Also, oil would accumulate from Diesel engines, freight cars and trucks. Oil deposits also came from G.M. spraying oil on stored steel. Further, it had rained the night before and the ground was wet in places. Schiller described Switch No. 4, where he was injured as being "treacherous", and the ground conditions as being "bad."

There was also substantial evidence that there was little or no light in the switching areas and that at night the men were working in the dark.

G.M. had provided lights on its building to assist truckers when loading and unloading their trucks, but had provided no lighting away from the building area for the men who were engaged in switching operations at night.

Schiller and a number of railroad employees testified to these facts and as to the dangerous ground and lighting conditions. Some G.M. employees also testified as to these conditions. This testimony was detailed in the opinion of the District Court denying the motion of G.M. for judgment notwithstanding the verdict. There was water, some mud, and oil on the ground in the area.

There was also evidence of oil deposits at the South Yard.

There was evidence that Schiller's shoes were examined at the hospital and were found to have oil around the outer edges of the soles and also some sand similar to that on the ground at the Fisher Body Yard, the sand being locat-

ed more on the ball of the soles. The oil was dark-colored fluid, heavier than a fluid oil, and was described as coming, some from the Diesel and some from the switch itself.

Schiller testified:

In attempting to set this brake my feet slipped from under me and I went in between the cars.

In our opinion there was substantial evidence to support the factual findings of the District Court that the failure of G.M. to light and adequately maintain the premises was a proximate cause of Schiller's injuries. The Court also found that the unsafe condition of the gondola car and the failure of Penn Central to give adequate instructions to Schiller was a cause of his injuries. The Court further determined that the joint and concurrent negligence of both defendants caused Schiller's injuries.

In our opinion these factual findings are supported by substantial evidence and are not clearly erroneous.

It is the contention of G.M. that the accident was caused solely by the negligence of Penn Central. This contention ignores the evidence that the maintenance of the ground and lighting conditions was its [G.M.'s] sole obligation, and that Schiller fell in between the cars only after he had slipped.

■ G.M. relies on its cross-examination of Schiller, during which he allegedly made an admission to the effect that the only reason he fell was because of the awkward car and the location of the brake in a very low spot. G.M. contends that this was a judicial admission which precludes recovery by plaintiff from it. It relies on a number of Supreme Court of Ohio and appellate decisions, including Winkler v. City of Columbus, 149 Ohio St. 39, 77 N.E.2d 461 (1948); Hodges v. Ettinger, 127 Ohio St. 460, 462, 189 N.E. 113 (1934), and New York Cent. R.R. v. Stevens, 126 Ohio St. 395, 185 N.E. 542 (1933).

The District Court found this contention to be without merit, even under Ohio law, stating:

In the context of this case, the argument that liability is precluded by plaintiff's statements regarding what he thought might have made him fall is similarly without merit. The following colliquoy [sic] took place between counsel for General Motors and plaintiff

Q. Mr. Schiller, is it not true, as far as you know, the only reason why you fell was because of the awkward car and that the brake was in a very low spot?

A. That is what I said, yes.

The Court: It is not a question of what you said. He is now asking what your answer is.

Q. Is that a fact?

The Court: Read the question.

(thereupon the pending question was read by the court reporter.)

A. Yes, sir.

The Court: What is your answer?

The Witness: Yes, sir.

The Court: Beg pardon?

The Witness: Yes. (D–R. 50–51)

Had plaintiff been fully aware of what had caused his injury, his statement would have been binding as to the cause of the accident. However, plaintiff repeatedly stated that he remembered the fall only hazily and that he was not aware of the oil and grease that was found on the soles of the shoes he was wearing when found under the train. Thus, the jury could reasonably have concluded that plaintiff accurately testified as to the state of his knowledge and that the evidence showed that the accumulation of oil and grease on the shoes was an additional cause of which plaintiff was unaware or could not recollect. (A. 26–27).

Even assuming that Schiller did make an admission against interest, this ought not to be conclusive against him when there is substantial evidence to the contrary.

■ In any event, Schiller's opinion as to causation would not be binding on Penn Central, which had the right to prove, and did prove, that G.M.'s negligence contributed to cause the accident.

### III

G.M. contends that its liability to Penn Central under the side track agreement should be determined under the common law of Ohio. We disagree.

■ It was, of course, appropriate, in our judgment, to resolve the liability of G.M. to Schiller under the common law of Ohio. This was done and G.M. was found liable.

■ We are concerned in this appeal only with issues between G.M. and Penn Central under the side track agreement. It was the side track agreement that provided for the construction, maintenance and operation of railroad facilities on the private property of G.M. G.M. must be held to know that F.E.L.A. governed the liability of Penn Central even though the operations were conducted on G.M.'s property. Wanser v. Long Island R.R., 238 F.2d 467 (2d Cir. 1956), cert. denied, 353 U.S. 911, 77 S.Ct. 668, 1 L.Ed.2d 665 (1957).

■ Penn Central's cross-claim was not predicated upon the general law of torts, but upon an indemnity agreement. The "acts or omissions" referred to in the indemnity provision should be held to mean any wrongful or negligent acts of G.M. which would impose liability upon the railroad under F.E.L.A. and not upon G.M.'s common law liability in tort to Schiller. Chicago, R. I. & P. R.R. v. Dobry Flour Mills, 211 F.2d 785 (10th Cir.), cert. denied, 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954).

■ Penn Central owed to Schiller a nondelegable duty to provide him a safe place to work even though he was working on premises of G.M., over which premises it had no control. Shenker v. Baltimore & Ohio R.R., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963); Carter v. Union R.R., 438 F.2d 208 (3d Cir. 1971).

In Payne v. Baltimore & Ohio R.R., 309 F.2d 546 (6th Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963), we held that the negligence of the owner of the premises was imputable to the railroad. We stated:

A railroad has the nondelegable duty to provide an employee with a safe place to work. This is so despite the fact that it may not own, control or be under a primary obligation to maintain the premises on which the employee is injured. A railroad is not relieved from liability because such premises are unsafe or because of the existence of an unsafe condition brought about through the act of another and without fault, on the railroad's part. Sinkler v. Missouri Pacific Railroad Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958); Chicago Great Western Railway Company v. Casura, 234 F.2d 441, 447 (8 Cir. 1956); Kennedy v. Pennsylvania Railroad Company, 169 F.Supp. 406, 410 (W.D. Pa., 1959). (Id. at 549).

The ground and lighting conditions existing at the yard of Fisher Body did not provide a safe place for Penn Central's employees to work, and liability was imposed on the railroad as a result thereof. Penn Central was entitled to require G.M. to equally bear the $550,000 judgment in favor of Schiller, as was ordered by the District Court.

It is therefore ordered that the judgment entered on the cross-claim of Penn Central against G.M. be and it is hereby affirmed.